## Mitchell, et al. v. Mays.

(Decided February 3, 1925.)

### Appeal from Knox Circuit Court.

1. Boundaries—Evidence Held to Sustain Finding as to Location of Beginning Point of Deed.—Evidence held to sustain finding as to location of beginning point of deed, described as "a stone and gate post on the county road."

2. Deeds—Read as a Whole.—In identifying land conveyed, deed must be read as a whole.

3. Boundaries—Corners when Located Must Control.—Corners when once located must control.

DISHMAN & TINSLEY for appellants.

J. M. ROBINSON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

This is a controversy between Mrs. Lucy Bell Mitchell and her niece, Lenora Mays, as to the title to a small body of land. Both of them claim under Larkin Helton, who was the father of Mrs. Mitchell and the grandfather of Miss Mays. On March 14, 1907, Larkin Helton executed to Mrs. Mitchell a deed for the following boundary of land:

"Lying on the waters of Lynn Camp creek and bounded as follows, to-wit: Beginning on a stone and gate post on the county road, and thence south to a stone and gum on the L. & N. Railroad right of way; thence westwardly with the right of way to the stone at Lewis Steele's property; thence north with the line of Larkin Helton and Lewis Steele, to the county road; thence eastwardly with said road to the beginning; the same is to have the old house place; the party of the second part is to have the said land at the death of the party of the first part."

Afterwards, on April 23, 1915, he executed a deed to Lenora Mays for the following boundary of land:

"Beginning on a stone on the north side of the county road, Wiley Medlin's corner; thence west 12 poles to a gate post, Bell Mitchell's corner; thence southwardly 20 poles to the R. R. right of way; thence east with said right of way 12 poles to a stone; thence north 18 poles to a stone, the beginning corner."

Mrs. Mitchell maintains that her deed covers all the land covered by the deed to Miss Mays and that the deed to the latter is void as her father had previously conveyed all the land to her. Miss Mays maintains that the deed to Mrs. Mitchell does not include the land conveyed to her. The controversy turns on the proper location of the beginning point in Mrs. Mitchell's deed. The situation is roughly shown on the following plot:

Mrs. Mitchell locates the beginning point of her deed at (1). Miss Mays locates it at (5). The circuit court held in favor of Miss Mays. Mrs. Mitchell appeals.

The great preponderance of evidence sustains the finding of the circuit court. It is shown that for years before either deed was made Larkin Helton and his wife had agreed between themselves that Mrs. Mitchell was to have the home place and that Miss Mays was to have the land afterwards deeded to her. The draftsman of the deed to Mrs. Mitchell testified that when he wrote the deed they were sitting in the house at (8), where Larkin Helton then lived and the Mitchells now live, that Larkin Helton pointed out to him the gate post at the figure (5) as the beginning corner of the deed and the elm as the corner at the other end of the line at (6). A number of other witnesses confirmed this testimony. It is also confirmed by the language of the two deeds. The beginning corner of Miss Mays' deed is at a stone, Wylie Medlin's corner. There is no dispute about this corner. Mrs. Mitchell claims that this is the beginning corner of her deed, but her deed does not so describe the beginning corner. It reads, "at a stone and gate post." It is in-

credible that the grantor, if he had intended to begin at Medlin's corner, should not have so described the beginning corner in the deed to Mrs. Mitchell. The same is true as to the other end of this line, which is described in Mrs. Mitchell's deed as a stone and gum, while the same corner is described in the other deed as a stone. When the two deeds are read together and it is borne in mind that this was the home place of the grantor, where he had lived for many years and that the lines were in plain sight from his house, there is no room for the conclusion that the beginning corner of Mrs. Mitchell's deed is at (1) or the first line from (1) to (2).

It is insisted, however, that the deed to Mrs. Mitchell contains these words: "The same is to have the old house place;" that an old house stood at the point marked (7) and that this piece of ground was known as the old house place; but these words may with equal propriety refer to the old house place which lies west of the line (5) to (6), for the grantor had lived in this house for many years and it was the house where he and Mrs. Mitchell were then living. There had been once a house at (7), but this house had been burned down forty-eight years before. Mrs. Mitchell never saw it and the draftsman of the deed knew nothing of such a house. He testifies that the only old house he knew anything about was the house where they wrote the deed. There is also testimony to the effect that the other end of the place was known as the old orchard place. But, however this may be, these words can not control the positive location of the corners of the tract conveyed to Mrs. Mitchell. The deed must be read as a whole, and when the gate post and the gum tree are located they must control. The evidence here is so clear as to leave no doubt of the truth.

Judgment affirmed.